By the Court. Pierrefoht, J.
The plaintiff having rested his case, upon proving the facts above stated, the Judge dismissed the complaint; and we are called upon to say whether he committed an error.
We think that upon payment of $300 by Dean & Finnegan, they were entitled to one of the tables discharged from the lien of the mortgage, and that they might have compelled a selection.
No claim was made for the delivery of any table until six months after they had all been sold under the mortgage; and not until more than six months after the plaintiff had acquired whatever rights he now has; and no one of the four has ever been selected, or in any manner identified as the one claimed by the plaintiff.
The mortgage covered the four tables, and when purchased it was as much a lien upon each as upon any one of the four, and a sale under the foreclosure gave to the bona fide purchaser a title to each of the four tables. The defendant cannot be said to have “ wrongfully converted the property to his useand as the proofs now stand, the plaintiff is not entitled to the possession of any particular one of these tables any more than to each one of them ; and as it is clear, that he is not entitled to each, and as he has shown no selection or claim to any particular one, we think the complaint was properly dismissed.
The Court are now asked, at General Term, to entertain an original motion to amend the complaint, and so to amend it as to render a new trial necessary, and to reverse the judgment for errors which do not now exist, and which errors are proposed to be created by the amendments.
We doubt any such jurisdiction in the Court, and we should be slow to exercise any such powers if clearly possessed.
No motion to amend was made below, and it.is not proper for *567 a Judge, on a trial, to volunteer and make amendments not moved" by either party. (Loyd v. Fox, 1 E. D. Smith, 101; Brown v. Colie, 1 E. D. Smith, 265.) The plaintiff is not without remedy, if he brings a proper action sustained by sufficient proofs; but with no other evidence than this case presents, he must fail in a simple action for the conversion of personal property.
The judgment must be affirmed with costs.
Woodruff, J.
The mortgage executed by Dean & Finnegan to the plaintiff, on the 7th of September, 1855, being in terms subject to the prior mortgage given to the defendants, the plaintiff knew, when he purchased the interest of Dean, at the sale then made of it by the Sheriff, and also when, in the month of April, 1856, he took from Finnegan an assignment of his interest, that the defendants held a mortgage of the four tables, which was the first and a valid lien upon the property.
His purchase did not impair the rights -of the defendants as mortgagees. (Hull v. Carnley, 1 Kern. 501; 17 N. Y. Rep. 202; Manning v. Monaghan, 1 Bosw. R. p. 467, note.)
The plaintiff’s rights, on the 8th of September, 1856, when he “ demanded of the defendants one of the billiard-tables, cues, maces,” etc., were the same as the rights of Dean & Finnegan would have been had they made the same demand,- not having executed a second mortgage, and their interest in the tables not having been sold by the Sheriff, or otherwise, to any one.
What, then, is the true construction of the instruments executed by the parties?
Dean & Finnegan, upon the purchase of the billiard tables, had executed and delivered to the plaintiff a mortgage to secure the payment of ten notes of Dean, endorsed by Finnegan, of $100 each, parcel of the purchase-money.
The whole purchase-money, for the four tables, was $1100, or $275 for each table. By the terms and legal effect of this mortgage, the defendants acquired a title to the tables, as security for the whole sum of $1000—i. e., for the payment of all of the notes given therefor by Dean, endorsed by Finnegan, and of each of such notes; and they were not, by the tenor of the mortgage, bound to relinquish their lien upon any of the tables, until all of the notes were paid.
*568 But the memorandum, signed by the defendants at the foot of the bill of sale, is an agreement to give a receipt in full for one table, after $800 has been paid.
Giving to this agreement the construction claimed by the plaintiff’s counsel—and perhaps that is most in accordance with the intention of the parties—it was one of the terms of the purchase and of the mortgage, that when $300 was paid by the purchasers, the' defendants were to release one of the tables from the mortgage, and the purchasers, thereafter, to hold one table as their own absolute property.
The sale having been made at $275 for each table, and $300 being paid, the defendants would thus receive not only payment in full for the table so to be released, but would have $25 towards payment for the other three; and when a further $300 was paid, they would have $50 towards payment for the remaining two, and so on. Their relative security would thus increase, as the tables were successively released. Such an arrangement was reasonable, and may, taking both instruments together, be treated as showing the whole intent of the parties.
The defendants could not, therefore, be required to give up any table until $300 was paid; and, until $300 was paid, they could retain their lien, and, in case of any default of payment, could foreclose and sell the four tables.
On the 14th of January, 1855, Dean & Finnegan paid to the defendants $275.
Even if it be conceded, that the payment of $300 would have the effect to discharge one table from the mortgage lien without any act of release by the defendants, in performance of their agreement, it is quite certain that payment of $275 would not ■per se, have that effect, nor would it entitle Dean & Finnegan to have one of the tables designated as being so discharged. The amount had not been paid, which was required to entitle them to have one of the tables released, under the most favorable construction of the meaning and effect of the agreement of the 29th August, appended to the bill of sale.
It is claimed by the plaintiff, that the receipt given on the 14th of January, 1855, operated to discharge one table, so as to entitle him to maintain this action therefor. That paper, signed by the defendants, acknowledges that they have “received from Dean *569 & Finnegan $275, for one billiard-table, said table being one of those included in the mortgage,” etc.
But this paper by no means necessarily operated to release any table from the mortgage. Had not the agreement of August 29th, 1854, been given, binding the defendants to release on the payment of a part of the purchase money, the payment for one, or two, or three of the tables would not have released them; they would still be held, under the mortgage, until the fourth was also paid for; and, under that agreement, the paper in question could have no greater effect, unless the whole $300 was paid.
It was literally true, that on the 14th of January, the receipt of $275 was payment for one table; it was exactly the price at which it was sold, and that is all which this paper necessarily acknowledges.
It does not show an intent to alter or vary the conditions upon which, by the existing agreements, Dean & Finnegan were to have one of the tables released.
Indeed, the terms of this paper are susceptible of a still more restricted construction, viz.: that the money was received “ on account of” one billiard-table; it is not declared to be “in full for one table,” as was provided in the agreement of August 29th; but “ for,” i. e., towards, on account of, one table, or in part payment of the amount, upon payment of which Dean & Finnegan will be entitled to a release of one table.
But, in either aspect of the meaning of its terms, in this respect, it was not a compliance with the terms, on which alone one table was to be released. Those terms required the payment of $300. The defendants were not bound to release the table, and did not release it.
And again. The defendants were not bound to release one table, unless, nor until, $300 was paid. If the receipt given on the 14th of January, could be construed as an agreement to release one table from the mortgage, there was no consideration to uphold it. What was paid, ($275,) was due to the defendants, and its payment was no sufficient consideration for an agreement, on their part, to relinquish any security they held for the payment of the balance. ' In this aspect, then, to hold the receipt to mean any thing more than “received on account of,” or “towards,” one table, (which, in the light of the original agreement, and all the *570 facts, it may well mean,) would be so construing it, as to modify the original contract to the defendants’ prejudice; and that, too, without any consideration paid to them therefor.
It may be, that if the $300 had been paid, and the instrument of the 29th of August be so construed, that such payment would, per se, entitle Dean & Finnegan absolutely to have one of the tables released, it was the duty, as well as the right, of the defendants, to say’which of the tables should be discharged; and that their foreclosing, and themselves purchasing and taking possession of the four tables, would not prejudice the rights of Dean & Finnegan to have such designation made. If so, then the demand made by the plaintiff on the 8th of September, 1856, may, perhaps, be deemed to require them to make a designation; and their unqualified refusal to deliver one table, may be taken as a denial of the plaintiff’s right, and subject them to an action for its value.
But, under the views above expressed, the four tables continued mortgaged up to the time the defendants sold them, as absolutely and effectively as on the day the mortgage was executed; and, by the foreclosure of the mortgage, and the sale under it, the title of the defendants, as purchasers at such sale, became absolute, and the complaint was rightly dismissed.
Judgment affirmed.